**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-3140
_____

ANTHONY P. PAGLIACCETTI,
                                                    Appellant

v.

JOHN KERESTES, SUPERINTENDENT, SCI MAHANOY;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-11-cv-06381)
District Judge:  Honorable Eduardo C. Robreno

Argued on April 8, 2014

Before:  AMBRO, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed: September 4, 2014)

Michael Wiseman, Esquire **(Argued)**
P.O. Box 120
Swarthmore, PA 19081

                Counsel for Appellant

Thomas W. Dolgenos, Esquire
Anne Palmer, Esquire          **(Argued)**

Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107

      Counsel for Appellees

---

O P I N I O N

---

**ROTH**, Circuit Judge:

Anthony Pagliacetti appeals the District Court's denial of his petition for a writ of habeas corpus. We will affirm.

## I.    Background

In the early morning hours of December 24, 2002, Jason McFarland, the victim, was at a tavern in South Philadelphia with his cousin, Michael Piazza, and his uncle, Michael McFarland. Pagliacetti, a lifelong friend of the victim who had grown up in the same neighborhood, and Pagliacetti's girlfriend were also at the bar. The parties were drinking heavily and talking. Jason McFarland's brother, Joseph McFarland, arrived, intending to drive Jason home. At some point, Pagliacetti asked Jason and Joseph McFarland if they knew anything about the recent robbery of Pagliacetti's sister's cell phone. Pagliacetti became angry when they denied knowing anything about it and a heated argument began.

Joseph McFarland attempted to break up the argument by getting the parties to leave the bar. Pagliacetti grabbed Jason McFarland's shoulder as the confrontation moved outdoors. Joseph McFarland tried to separate Pagliacetti and Jason McFarland by

2

ushering Jason to his car. While Jason was near the car roughly twenty feet away from Pagliacetti, Pagliacetti pulled an unlicensed handgun from his waistband and shot twice, fatally striking Jason McFarland in the chest and the head. Pagliacetti then ran down the street, stashing his gun and sweatshirt in the wheel-well of a car as he ran. Piazza ran after him, ultimately catching him and leading him back to the scene. Pagliacetti's defense focused on a self-defense theory, with Pagliacetti arguing that Jason McFarland had punched him and that Pagliacetti had seen Jason reach for something, possibly a weapon, in his waistband when he was near the car. Pagliacetti did have an injury on or near his left eye, but other testimony indicated that this was from a punch from Piazza that occurred after the shooting, either during a scuffle when Piazza caught Pagliacetti or from when Pagliacetti had been brought back to the scene and denied shooting Jason.

On April 5, 2004, a jury in the Philadelphia Court of Common Pleas convicted Pagliacetti of third-degree murder and three weapons offenses. Pagliacetti was sentenced to 15 to 30 years in prison, with no additional sentence for the weapons charges.

He appealed to the Pennsylvania Superior Court, arguing that the conviction was based on insufficient evidence in light of his self-defense claim. The court affirmed his conviction and the Pennsylvania Supreme Court denied his request for allowance of appeal. Pagliacetti then filed a petition under the Pennsylvania Post Conviction Relief Act, claiming, inter alia, ineffective assistance of trial counsel for failing to object to an allegedly improper jury instruction on self-defense and ineffective assistance of appellate counsel for not litigating the issue of trial counsel's ineffectiveness. The PCRA court

3

denied relief. His appeal to the Superior Court also failed and the Supreme Court denied allowance of appeal.

On October 12, 2011, Pagliacetti, still represented by the attorney who handled his PCRA claim, filed a federal habeas petition in U.S. District Court for the Eastern District of Pennsylvania. The District Court agreed with Pagliacetti that the jury instruction on self-defense was improper, but held that the error was harmless and denied the petition. Pagliacetti appeals.

## II.  Discussion[1]

We review Pagliacetti's habeas petition under the standard set forth in the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254. A state court's rejection of a constitutional claim provides a basis for relief if the state-court adjudication was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. *Id.* § 2254(d)(1).

Pagliacetti's habeas petition raises two grounds for relief: (1) a due process violation based on the improper jury instruction on self-defense, and (2) a derivative ineffective assistance of counsel claim.

An error in the jury instructions is not grounds for habeas relief if the error is harmless. *Yohn v. Love*, 76 F.3d 508, 522 (3d Cir. 1996). An error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In determining whether there is

---

[1] We have jurisdiction under 28 U.S.C. § 1291. The District Court had jurisdiction under 28 U.S.C. § 2254(a).

harmless error, we examine the impact of the error on the trial as a whole. *Yohn*, 76 F.3d at 523. Thus, we ask whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error. *Id.*

In addition to the due process claim related to the jury instruction, Pagliacetti also argues that his Sixth Amendment right to effective assistance of counsel was infringed. To prove this, he must show that (1) his counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show prejudice, the petitioner must demonstrate that the ineffective assistance of counsel actually had an adverse effect on the defense such that the result of the proceeding would have been different but for counsel's errors. *Id.* at 693–94.

In these cases, rather than applying the *Brecht* and *Strickland* tests separately, we have held that an error that is harmless under *Brecht* is also considered non-prejudicial under *Strickland*. *See Whitney v. Horn*, 280 F.3d 240, 258 (3d Cir. 2002) (explaining that the purpose of both tests is to determine whether the error affected the jury's verdict).

We agree with the District Court that, to the extent there was error in the jury instruction, it was harmless. The prosecutor presented sufficient evidence showing that Pagliacetti did not abide by the duty to retreat and did not hold a reasonable belief that he was in immediate danger of death or serious bodily harm.

There was considerable evidence that Pagliacetti could have retreated from the conflict at several points during the encounter. He could have reentered the bar at any point or retreated down the street, which he did after the shooting. Even crediting

Pagliacetti's testimony that Jason McFarland punched him when they were standing near each other, Pagliacetti still could have retreated.

There is also little evidence that Pagliacetti reasonably believed that Jason McFarland was about to seriously injure him by reaching for something in his waistband. As the District Court noted, "it defies logic to argue that Jason would punch Petitioner, then run away from him, only to pull a gun on him from a distance of twenty feet." *Pagliacetti v. Kerestes*, 948 F. Supp. 2d 452, 460 (E.D. Pa. 2013).

Even if the jury had not received erroneous instructions, Pagliacetti's self-defense claim would still fail because there was substantial evidence showing that he violated his duty to retreat and did not have a reasonable belief that McFarland was going to seriously injure or kill him. Therefore, the error in the jury instruction was harmless and did not have a substantial influence on the verdict. *See Brecht*, 507 U.S. at 637. Because the error was harmless under *Brecht*, counsel's failure to object to the jury instruction was not prejudicial under *Strickland*.

Pagliacetti argues that the jury should have also been instructed on imperfect self-defense, that is, when there is an unreasonable, rather than a reasonable, belief that deadly force was necessary. This argument fails for the same reasons. First, there was still sufficient evidence that Pagliacetti did not adhere to his duty to retreat. Second, there was also sufficient evidence for the jury to find that Pagliacetti did not even unreasonably believe that deadly force was necessary.

Pagliacetti also argues that his joint ineffective assistance of appellate counsel claim means we should employ the harmless error standard that should have been applied

6

on direct appellate review, namely the standard in *Chapman v. California*, 386 U.S. 18 (1967), rather than the standard in *Brecht*. Under *Chapman*, the government must show that an error is harmless beyond a reasonable doubt. 386 U.S. at 24. Under *Brecht*, an error is harmless unless it had a "substantial and injurious effect" in determining the jury's verdict. 507 U.S. at 637.

Pagliacetti points to no binding case that has taken this approach. Indeed, there are precedents that hold otherwise. *See Fry v. Pliler*, 551 U.S. 112, 121–22 (2007) (federal habeas court must use the *Brecht* standard regardless of whether state appellate court recognized the error and reviewed it under *Chapman*); *Hassine v. Zimmerman*, 160 F.3d 941, 952 (3d Cir. 1998) ("[I]t is anomalous to say that a *Chapman* standard should apply in *any* habeas case . . . . [N]ot to apply *Brecht,* and to apply instead a less deferential standard, is to nullify not merely the policies that the Court has advanced, but the very import of the *Brecht* decision."). Thus, the District Court was correct to review harmless error using *Brecht* rather than *Chapman* or another standard.

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's denial of the petition.